Judge Marshall
delivered the Opinion of the Court.
In October, 1820, John T. Mason purchased the respective interests of Robert Stockton and Joseph Me* Murtry in the Iron works and appurtenances which, up to that time, had been held by Mason, Stockton and McMurtry, as partners under the name of the Beaver Company — except five hundred acres of land, called the Salt Lick tract, which had been contributed to the joint stock by McMurtry, and was, in this contract of dissolution, surrendered back to him. ' •
For McMurtry’s interest, besides this surrender, Mason agreed to give “six thousand dollars, in three equal annual payments, from the first- day of January (then next ensuing,) in equal parts of bar .iron and castings, at the wholesale prices; but the said McMurtry to have the amount of each instalment in castings at any time of the year preceding the period stipulated for payment, that he makes demand thereof.” Mason also reserved the right of purchasing, at any time, the Salt Lick tract, at the price of two thousand dollars in castings, and acquired, by the express terms of the contract, the entire interest in several stores connected with the establishment, and in the debts due thereto, except certain accounts charged to Stockton. 'By this acquisition, he became entitled to all balances justly chargeable to Mc-Murtry, on his past dealings with said stores; and as to all subsequent accounts, while he should continue to be the proprietor of the stores, hp of course would be the creditor. But no reference is made to any past or future accounts of McMurtry, except what is contained in the stipulation that he is to have the amount of each instalment in castings when demanded during the year *218 preceding the day it was to fall due. It was stipulated, by the agreement, that Mason should give James and Richard M. Johnson as sureties for the performance of his undertakings; and, in July and September, 1821, he delivered to' McMurtry six notes executed by himself, Cave Johnson and R. M. and James Johnson, some or all of whom appear to have been then or afterwards his partners in the Beaver Works, or some of the establishments connectedtherewith. Of these notes, three were for one thousand dollars each, payable in bar iron on the first day of January, in the years 1822, ’23 and ’24, and the remaining three for a like sum payable in castings on the same days. ,
At the date of the contract, there were several ac- ’ counts standing .against McMurtry, in the different branches of the establishment; and he continued until some time in the year 1824 or 1825, to take up various articles, which were charged to him in account. Various particular credits were entered'on these accounts, but they all remained unsettled. The earlier accounts were left standing, probably under the expectation that they would always be allowed against so much of the demand, growing out of the contract of 1820; and the credit afterwards given to McMurtry was no doubt founded on the debt due to him, and kept open under the expectation that the accounts against him, would, on settlement, discharge so much of that debt. The condition of both the parties authorizes the assumption that neither intended or expected any thing else than that these accounts, when correctly adjusted, should be set-off against McMurtry’s demands. One item alone, consisting of a charge, under date of May 31, 1821, of two hundred and twenty one salt kettles, at one hundred dollars per ton — three thousand and forty eight dollars seventy five cents, is to be distinguished from the rest of the account.
On the first of March, 1821, McMurtry, by letter, ordered at least thirty tons of salt kettles, of a designated pattern, to be made for him ás soon as it could be done; and although he makes no reference to the contract, he must be understood as making the requisition on the *219 ground of the right given by it. The salt kettles above mentioned were furnished under this order, but not immediately.
Before the end of the year 1821, Mason took the Salt Lick tract, according to the terms of the contract.
On the 22d of November, 1821, the first note for bar iron, due the first day of January, 1822, was assigned by McMurtry to S. D. Everett, and on the 8th of January following, he assigned it to John Anderson, who shortly afterwards commenced suit on it, and on the 12th of November, 1823, obtained a judgment for eleven hundred dollars, in damages. In October, 1826, that judgment, for the reversal of which the defendants had prosecuted a writ of errof with supersedeas, was affirmed by this Court; and in October, 1827, the obligors in the note (except James Johnson, who was then dead,) filed this bill, against Everett, Anderson and McMurtry, praying, not only ¿hat the judgment on the first note should be enjoined, but that the other notes should be surrendered up, on the ground that the first note was in fact discharged before it was assigned, by the salt kettles delivered in the year preceding the time of its falling due; and that, of the other, notes, some were discharged, also, by that item, and the rest should? in equity, be set-oif against the pums due from McMurtry on the various accounts above referred to — it being, alleged that McMurtry was insolvent, except to the extent of his demands against the complainants, growing out of said contract, and which they said were restricted to the six notes, as they denied that the ‘Salt Lick tract’ had been purchased by Mason.
Before this bill was filed, the second note for bar iron had been assigned to Ennis Combs and John B. Duke, and the third to E. Combs, T.'Jameson and C. Banks, and suits had been brought upon both notes, though judgments were not obtained until 1830, when Combs and Duke recovered fourteen hundred and sixty five dollars — and the other assignees fourteen hundred and five dollars. In the same year, McMurtry, who had never assigned either of the three notes for castings, recovered judgments, upon the first for fifteen hundred *220 and twenty five dollars, and on the two others, for about oné thousand four hundred dollars.
In 1828, an amended bill was filed, by which Duke and Combs and the administrators of Jameson and Banks were made defendants.
The answer' of McMurtry denies the correctness of the accounts set up against him, and especially in regard to the time of delivery of the two hundred and twenty one salt kettles, and the price charged; he also alleges, that the Salt Lick tract had been bought by Mason, before the first of January, 1822; and claims a credit for four hundred dollars in castings, due before the same time, on an agreement made before the sale of his interest to Mason.
The other defendants require proof of the allegations, of the bill.
Many depositions and exhibits were filed; and the Circuit Court having, by interlocutory decree, declared that the salt kettles delivered under McMurtry’s order of March, 1821, should be credited upon the note for bar iron, assigned to Anderson, and also, that Mason should be charged with the purchase of the Salt Lick tract, at two thousand dollars in castings, appointed a commissioner to state an account between the parties, reducing such of Mason’s accounts as were charged at Commonwealth’s paper prices, to their specie value at the time, &c.
Upon the return of the commissioner’s report, it appeared that, charging Mason with eight thousand, dollars — the amount of the notes and the stipulated price of the Salt Lick tract, without interest, and without any reference to the amount of the judgments, or to the time when the notes respectively become due; and crediting him by the several balances appearing on his various accounts against McMurtry, reduced to their specie value at the time — there was a balance against Mason, of four thousand three hundred and thirty seven dollars forty seven and a half cents; and the exceptions of Mason, on one side, and Anderson on the other, to the report, having been overruled, a decree was pro *221 nounced, in October, 1835, enjoining perpetually the judgment in favor of Anderson, on the first note forbar iron, and also, the other five judgments, except the sum of four thousand three hundred and thirty seven dollars forty seven and a half .cents, and directing the credits allowed to Mason, to be applied to the notes which first became due, and the entire costs - were decreed against McMurtry and the personal representative of Anderson, who was then dead.
delivered never Among the obligations given in the purchase of land and iron works, were two notes of $1000 each, both payable at the same time — one in castings, the other in bar iron; but the obligee had a right, by the terms of the contract, to demand the am’t'of both, in castings, at any time during the year preceding the time when they became due. Early jn that year, he gave an order for a large amount of castings— some of which were made and delivered in the course of the year, and some more afterwards; but the amount at any time exceeded the amount originally payable in castings and due. The note for bar iron having been transferred and passed to an assignee, who recovered a judg t upon it, this bill was filed to enjoin that judg’t, upon the pretext that the note had been, in fact, discharged, by the delivery of castings as above: — but held, that the obligor had no right to insist that the castings delivered should be applied to that note, rather than to the other, which, by its terms, was payable in castings, and remained unsatisfied in the hands of the payee. And further, that if the castings delivered had been sufficient to satisfy both notes, that fact constituted a good defence at law to the note sued on; and, therefore, the chancellor will not interfere with the assignee's judgment, even though the obligee was insolvent — especially, as he still held other demands against which the set off would be available.
To. re verse this decree, the defendants prosecute a writ of error. And we think the decree is fatally erroneous in several particulars.
First. As to the perpetual injunction of Anderson’s judgment. The decree seems to be based upon the idea, that the advances of' castings made to McMurtry, during the year 1821, were to be applied specifically to the discharge of the note for bar iron due in January, 1822, and assigned to Anderson, although the amount of such advance might not exceed the amount due from Mason in castings at the same time. This could not be justified, except upon the ground of a special agreement between the parties, to that effect; and if the stipulation authorizing McMurtry to demand and receive in castings the whole amount of any instalment, at any time in the year before it fell due, could be construed to give Mason the right to claim credit for any such advances first on the note for bar'iron — still as, in that case, he should and ought to have claimed such credit in the action at law, the chancellor would not enforce it against the judgment of the assignee; when, as was determined in the affirmance of the judgment by this Court, there was no sufficient excuse for not having asserted it at law; and when ample justice can still be *222 done to the debtor, byallowing the credit on the remaining part of the demand which has never been assigned.
In the above purchase, several notes having been given, payable in castings, on the first day of each of three successive years —the castings delivered in the course of each year, should be applied toward^ the payment of the note due at the beginning of the next year: it was not proper, in a settlement years afterwards, to apply them first to the full discharge of the first note, then to the second, and so on.
*222 Second. The same principle applies to the other notes for bar iron, which were also assigned, and which by the decree are made subject to be credited, in at least an equal degree .with the unassigned notes, not only by the advances made in castings during the year preceding the time of their falling due, but also, by the general accounts of Mason, whether accruing before the contract under which the notes were executed, or at any time from the date to the maturity of the notes, or even after they became due and were assign ed.
In all this there is obvious error. On the most favorable construction of the contract, Mason had no right to claim a specific credit on the notes for bar iron, or any of them, in preference to a credit on the other demands of McMurtry against him, except for such items as .were demanded and furnished under the stipulation of the contract, during the year before the instalment became due. As to all other items, his accounts constituted only general demands, which might be set-off, on • equitable principles, against McMurtry’s demands on him. And even as to those items, if there were any, which accrued under a' demand made in virtue of the stipulation above referred to, not having been claimed as credits in the actions at law upon the bar iron notes, and not having been ever noted in Mason’s books, as delivered in discharge of those notes, or any of them, nor so received by McMurtry, they must also be re-, garded, in equity, as mere general demands, not attaching specifically to the notes in the hands of the assignees, especially when there is debt enough in the hands of the original obligee to set off against all of Mason’s accounts.
Third. In point of fact, the two hundred and twenty one salt kettles, though ordered in March, 1821, were not all delivered, nor even made, during that year.— There is no express proof that more than about sixty were made and delivered during the year, and it appears that all were not delivered until the spring of 1823". It may, however^be fairly assumed that one half were de *223 Iivered, or were ready for delivery, by the 1st of January, 1822; and the residue by the 1st of January, 1823. And as the value of one half, as reduced to specie in the commissioner’s report, was only seven hundred and sixty two dollars eighteen and a half cents, it was erroneous, even on the principle assumed in the decree, to have considered the first note for bar iron as discharged by the salt kettles, when the value of the quantity delivered did not equal the amount of that note. Those which were delivered in the year 1822, if appplicable to either of the note? for bar iron, should have been applied to that which fell due on the 1st of January, 1823.
Where a party has given several different obligations, some of which are held by the obligee, and some by assignees ; and the' debtor has a right ofset-off,to some' extent, which is general, & not ap’ plicable, by special agreement, to any of the obligations in particular: the debt- or cannot insist on the set-off against any assignee while the original creditor still holds debt enough to extinguish it. And if the set-off exceeds the sum remaining due to' the original creditor, the eldest assignee has the' best equity;' the set-off must be' applied first to-the note last assigned, & so om
Where the object' of the bill was to enjoin judg'ts recovered by several different assignees, upon the-ground of equitable set off existing when the notes on which the judg’ts were recovered, were assigned; and it appears that one of the notes was exempt from any right of set off; no costs should have been given against the holder of the judg’t on that note; on the contrary, he is entitled to recover costs, as well as damages. Various decisions of the court below, upon mat ters of fact, are erroneous;but as each party is prejudiced by them in about the same degree, and several parties and witnesses have died, and injustice might result from opening the accounts, this court forbears to disturb the decisions of the court below, on those points.
*223 Fourth. But further: Mason having, for the reasons before stated, no right in equity to claim the appropriation of any óf his accounts specifically to the discharge of the notes for bar iron, and having, in fact, no ground for coming into equity to claim a set-off to any amount, except that arising from the multiplicity and complicacy of the accounts, and from the insolvency of McMurtry, which, except as to his demands against Mason, is proved — it is apparent that his equity could not reach either of the three notes for bar iron in the -hands of Mc-Murtry’s assignees, until that part ofMcMurtry’s demand which remained in his own hands, unassigned, should be exhausted by the application of the credits to it. And even then, as the equity of the first assignee would have been better than that of the others, and as Mason did not come into equity for a set-off of his unliquidated accounts until the first assignee had obtained judgment, and the two last had brought suit, it would have been proper to have set off the remaining credits to the last assigned note, rather than to the first; and especially as a considerable part of the accounts against McMurtry accrued after the first assignee had commenced his suit, and a portion of it after the second assigned note had become due.
Fifth. It is manifest, however, that, as the balance appearing against Mason, upon the commissioner’s report, and ascertained by the decree, exceeds the aggregate amount of the three assigned notes, he might and should have had all his credits set-off against that por *224 tion of McMurtry’s demand which was not assigned, and that, if the statement of the accounts by the commissioner is correct, none of the assigned notes could have been properly affected by the set-off; and therefore, none of the judgments obtained upon them, should have been enjoined to any extent. And as we are satisfied that no correction of-the accounts, which is authorized by the evidence, could render it necessary or proper to apply any part of the set-off to any of those notes, the decree is erroneous in enjoining any of them. Arid as, in any aspect of the case, the set-off could not affect the judgment on the first assigned note, it was erroneous to decree costs against Anderson’s personal representative.
In a sale of real estate, the purchaser had a right, until a certain time, to take an additional tract, ata stipulated price, & did take it tyithin the time. The vendor was then indebted to the purchaser, by open accounts, — which then, or soon afterwards, exceeded the amount to be paid for the land; and no new obligation was given in consequence of the election to take the land.1— held, that the price of the land must be considered as payable at once; and that the two debts, constituting set-offs against each other, were virtually extinguished in that way, so far as they were equal, the one to the other, and that, thus far,the statutes of limitations could apply to neither.
*224 Sixth. Upon examining the commissioner’s report, and'comparing it with the evidence, we are. of opinion that some items are charged to McMurtry, of his liability for which there is no sufficient proof, and that he was' entitled to the credit of four hundred dollars claimed by his answer, and not allowed either in the report or thé decree.
We are also of opinion, that there are errors on the other side, arising from the commissioner’s having assumed too high a rate of discount in reducing some portions of the accounts against McMurtry from their amount in Commonwealth’s paper to their specie value. But as these errors seem substantially to balance and compensate each other, and as their precise amount cannot, on either side, be ascertained from the evidence, and as, in consequence of the death of several important witnesses, and also of some of the parties, great injustice, might be done by opening the accounts for re-adjustment and correction, we are inclined to regard the mutual demands of the parties as being presented with sufficient accuracy in the commissioner’s report, to authorize a final decree.
Looking to the report, we find that all the subsisting accounts against McMurtry, after allowing the credits properly belonging to each, amount to thirty six hundred and sixty two dollars fifty two and a half cents— part of which accrued as early as 1819 — to be set-off *225 against .this sum, there remained due to McMurtry three thousand dollars, in castings, due upon the three unassigned notes, and two thousand dollars, in castings, payable for the Salt Lick tract. With regard to ,which, it is evident, from the fact of no writings being executed for the future payment, that the amount is to be considered as due at once. And, from the same circumstance, it is probable that the parties considered it as substantially discharged, or subject to be very soon discharged,. by the then existing and accruing charges against’ McMurtry, and in favor of Mason. And this consideration at once answers the plea of the statute of limitations, as to the earlier portions of the accounts, and shows the propriety of taking up this item as a set-off at the date of the transfer of the Salt - Lick tract, which was about the first of January, 1822. Each of the notes for castings, so far as it is affected by the set-off, should be taken at the time it became due.
Adjusting the set-off on these principles, the thirty ■six hundred and sixty two dollars fifty two and a half cents will extinguish the two thousand dollars for the Salt Lick tract, and the first note for castings, due in 1822, and six hundred and sixty two dollars fifty two and a half cents of that which fell due in January, 1823 —leaving three hundred and thirty seven dollars forty seven and a half cents then due on that note; as to which amount, with its interest up to the rendition of the judgment, on the 30th of September, 1830, (as interest was allowed by the jury,} McMurtry’s' representative (he having died before the date of the decree) was entitled to the benefit of the judgment upon the second note for castings.
It follows that the injunction, as to the judgment on the last named note, should have been perpetuated, except as to the sum of four hundred and ninety four dollars forty seven and a half cents — being the amount of principal and interest due on that note, at the date of the judgment, and as to that sum it ■ should have been dissolved, with damages. As to the' judgments upon the first notes for castings, the injunction should have been perpetuated, and the collection of the two thou *226 gand dollars — the price of the Salt Lick tract — should also have been perpetually enjoined. The injunction as to the judgment on the third note for cas tings,-should have been dissolved with damages. And as to the three upon the assigned notes for bar iron, the injunction'should also have been dissolved, with damages, and the costs of the assignees decreed to them. The complainants should have had their costs decreed against McMurtry’s representative alone, to be set-off against the sum decreed against them, if required. The injunction against further proceedings by Anderson, on the supersedeas bond, must of course fall with the principal injunction.
Wherefore, the decree is reversed, and the cause remanded, with instructions to render a decree according 'to the directions above given. The plaintiffs in error ■are entitled to their costs in this Court.